BOBBY A. ELLIS *alias* ARTHUR P. ELLIS V. THE STATE.

No. 23614. Delivered March 26, 1947.

*Reynold M. Garner,* of Amarillo, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is swindling. The punishment assessed is confinement in the State penitentiary for a term of three years.

Appellant challenges the sufficiency of the evidence to sustain his conviction. The statement of facts discloses that on the 18th day of March, 1946, and for some time prior thereto Jay Taylor and Ed Johnson owned and operated the Amarillo Livestock Auction Company. On or about the day and date aforesaid, appellant appeared at the auction ring and purchased 73 mixed cattle. After he had purchased the cattle, Jay Taylor inquired of him if he had made credit arrangement at their office, to which appellant replied that he had not; that he did not know that he was supposed to do so. He then told Taylor that Mr. Britain at Checotah, Oklahoma, would pay for the cattle, whereupon Taylor called Mr. Britain over the telephone; that Britain told him that he would not honor any draft for any amount. Appellant then suggested that they call John Brown at Muskogee, Oklahoma, who owned the Farmers National Commission Company, for the purpose of ascertaining what he would say about it. They got in touch with Mr. Brown over the telephone. Taylor talked to Brown and Brown told him to go ahead; that the draft would be taken care of and to ship the cattle to him at Muskogee, Oklahoma. Thereupon the cattle were delivered to appellant and a draft was drawn by him on the Farmers National Commission Company, in the sum of $6,650.00 through the Citizens National Bank of Muskogee, Oklahoma, payable to the order of the Amarillo Livestock Auction Company. The actual purchase price of the cattle was $6,493.65, but the Amarillo Livestock Auction Company loaned him $156.35 to pay the trucking charges, and this amount was included in the draft. Jay Taylor further testified:

"The reason why I delivered the care and custody of the 73 head of cattle to the defendant, Ellis, was because I had talked with Mr. Brown over the telephone, and Mr. Brown told me he would honor the draft. * * * I let him, Ellis, have the three calves included in the 73 head for the same reason. * * * When I talked to Brown, after Ellis had talked to him, he said if the cattle looked all right, 'Get them on over here so we can sell them on our market tomorrow.' The cattle did look all right before I delivered them. * * *"

Mr. Taylor also testified:

"I shipped them on the representation that John Brown told

me if they were all right, to ship them. I thought John Brown's agent was buying the cattle. All I was interested in was the credit of John Brown. * * * I did not Okey the transaction until I had talked to John Brown, and not until the bank had Okeyed the draft; and the bank didn't Okey the draft until they had talked to and gotten John Brown's Okey, on the other end."

After the cattle arrived Brown refused to honor the draft. However, he sold the cattle for the Amarillo Livestock Company at a loss of about $800.00.

The foregoing is a brief statement of the salient facts proven on the trial. In our opinion, the facts are insufficient to sustain his conviction of the offense of swindling. It is quite obvious to us that Taylor did not rely upon the representation, if any, made to him by appellant, but relied upon Brown's assurance that the draft drawn on him in payment of the cattle would be paid when presented.

Appellant also challenges the sufficiency of the indictment but we do not deem it necessary to discuss this question inasmuch as the evidence will not justify a conviction for the offense of swindling.

For what we have said, it follows that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.